THE CITY OF EAST ORANGE, A MUNICIPAL CORPORA-
TION OF THE STATE OF NEW JERSEY, *ET ALS.*, PLAIN-
TIFFS-RESPONDENTS, v. THE BOARD OF WATER COM-
MISSIONERS OF THE CITY OF EAST ORANGE, DE-
FENDANT-APPELLANT, AND TRANSCONTINENTAL GAS
PIPE LINE CORPORATION, AND JERSEY CENTRAL
POWER & LIGHT COMPANY, DEFENDANTS-RESPOND-
ENTS.

Argued June 3, 1963—Decided June 13, 1963.

*Mr. Charles Danzig* argued the cause for the defendant-appellant (*Messrs. Riker, Danzig, Marsh & Scherer,* attorneys).

*Mr. William L. Brach* argued the cause for the plaintiffs-respondents.

*Messrs. Crummy, Gibbons & O'Neill* filed a brief for the East Orange Golf Association as *amicus curiae* (*Mr. John J. Gibbons,* of counsel; *Mr. Paul T. Murphy,* on the brief).

No appearance was entered for the defendants-respondents Transcontinental Gas Pipe Line Corporation, and Jersey Central Power & Light Company.

PER CURIAM. The Law Division entered a judgment which declared that title to the lands commonly known as the Water Reserve of the City of East Orange is vested in the City of East Orange and that the power to transfer interests in the lands rests in the City Council of the City of East Orange. Its reasons may be found fully set forth in *East Orange v. Board of Water Com'rs. of East Orange,* 73 *N. J. Super.* 440 (*Law Div.* 1962), and we consider that its treatment of the matter was essentially sound. The appeal of the Board of Water Commissioners, certified on our own motion, concerns itself only with the basic question of such power to transfer. No appeal was taken from that portion of the judgment relating to the validity of the leases to the utility company respondents and we are therefore not concerned with the particular procedure to be followed in entering into any such leases.

In 1908, East Orange adopted the provisions of *Chapter* 250 of the *Laws of* 1908 as its basic city charter. See Acts Saved From Repeal, *R. S.* 40:103–5(1) *et seq.* Under that Act the City Council was vested with broad governing powers including the express power to acquire land for public use

(*R. S.* 40:103–5(36)(6)) and the express power to adopt ordinances for many purposes including the supply of water for the use of the city and its inhabitants. *R. S.* 40:103–5(37)(23). The act also authorized the establishment of a Board of Water Commissioners which would have "the custody, control and management of the waterworks and water supply of the city" and would have authority "to maintain, repair, equip and extend the waterworks and water supply system." *R. S.* 40:103–5(37)(38). In 1909, following a referendum of the people, an ordinance was adopted establishing a Board of Water Commissioners.

The basic acquisitions by East Orange of the water reserve lands occurred prior to 1908 and, upon the adoption of the provisions of *Chapter* 250, title to the lands succeeded to the city. *R. S.* 40:103–5(2). Subsequent acquisitions were taken in the name of the Mayor and Council. When occasion arose for the execution of a lease or other instrument conveying an interest in water reserve land, it was done cooperatively by the City Council and the Board of Water Commissioners, although there was some indication at oral argument that in most instances the City Council was the granting party. Recently the Board of Water Commissioners took the position that it, rather than the City Council, had the authority to execute instruments conveying interests in water reserve land. It acknowledged that the statute contains no express authority to that effect but it contended that a comprehensive power in the Board to acquire and dispose of water reserve lands may be implied.

We consider that such far reaching implication may not fairly be drawn from any of the language in the 1908 act. It must be borne in mind that the terms of that act were not at all comparable to modern-day enactments establishing independent authorities—these enactments generally contain provisions that the newly created authority shall be a body corporate with express power to sue and be sued, to acquire and dispose of real and personal property, and to execute all instruments and do all things necessary for the carrying out of

its responsibility. *Cf. R. S.* 27:22–1 *et seq.; N. J. S. A.* 40:14A–1 *et seq.; N. J. S. A.* 40:14B–1 *et seq.* The 1908 act contained no such provisions. See *West Jersey, &c., R. R. Co. v. Bd. of Water Comm'rs,* 86 *N. J. L.* 634 (*E. & A.* 1914). It spoke not in terms of an independent body corporate but in terms of a municipal board exercising managerial functions with power to maintain, repair, equip and extend the waterworks and water supply system, power to establish rates, and power to adopt rules with respect to the protection of the water supply and waterworks. In context, the statutory power to extend may be taken to have reference to the supplementation of waterworks equipment such as the pumping plant, pipe-lines, etc., rather than to land acquisitions and, in general, the statutory terminology does not convey any reference to land dispositions. *Cf. N. J. S. A.* 40:60–26; *R. S.* 40:60–42.

The Legislature undoubtedly intended that insofar as the managerial function is concerned, the voice of the Board of Water Commissioners rather than the City Council should control. So far as the record indicates, there has not been any attempt by the City Council to interfere with that function. Apparently the underlying controversy here relates to the issue as to what body should have the ultimate determination as to the specific nature of the leasing of water reserve land where such leasing will in nowise interfere with water reserve purposes. It would seem that, absent legislative indication to the contrary, the ultimate determination would properly be vested in the governing body of the city as a whole, rather than in the specialized municipal agency. As the Law Division held, such is the result under existing legislation; further legislation has been passed by the Assembly and the Senate and is awaiting action by the Governor, but we need not deal with it here. See *Assembly Bill No.* 668 (1963).

Affirmed.

*For affirmance* — Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.